PEOPLE ex rel. ELIZABETH M. BEINERT, Plaintiff, v. RUDOLF P. MILLER et al., Constituting the Board of Appeals, Created by Chapter 503 of the Laws of 1916, et al., Defendants.

(Supreme Court, Kings Special Term, June, 1917.)

Certiorari — writ of, when sustained — Greater New York Charter, §§ 242-b, 719-a — statutes — city of New York — meaning of "block" — appeal.

Under section 719-a of the Greater New York Charter, added by chapter 503 of the Laws of 1916, enacted practically at the same time as chapter 497 of the Laws of 1916, the superintendent of buildings in each of the boroughs of the

city may refuse to approve plans for proposed buildings the erection of which would be in violation of the regulations adopted by the board of estimate pursuant to section 242-b of the charter as amended by chapter 497 of the Laws of 1916.

The board of appeals created pursuant to section 6 of chapter 503 of the Laws of 1916, upon a review of the refusal of a superintendent of buildings to approve plans submitted for a proposed new building because in his judgment they would be violative of section 242-b of the Greater New York Charter, is limited to action on the plans before it, and, if not approved, the action of the superintendent of buildings should be affirmed; and, while the board might indicate modifications and changes necessary to have the plans meet its approval, it cannot act until proper plans are submitted.

The word "block" in subdivision e of section 7 of article 2 of the regulations adopted by the board of estimate under section 242-b of the Greater New York Charter is used to designate that section of a "square block" fronting on a street between two intersecting streets, the context showing that it is used as practically equivalent to the words "portion" as used in said subdivision e, which clearly means "front portion."

CERTIORARI proceedings.

Robert H. Koehler, for relator.

Lamar Hardy, corporation counsel, by John P. O'Brien, assistant corporation counsel, for Rudolf P. Miller and others, constituting the board of appeals.

William H. Good for Albany Heights Realty Company, intervenor.

Mann & Buxbaum for Adolph Vogt, intervenor.

BENEDICT, J.  This proceeding grows out of the recently enacted amendments of the city charter

intended to provide, through the exercise of the police power, a comprehensive plan for controlling the area, height and use of buildings within the city of New York, which is popularly known as the "Building Zone Law." A writ of certiorari was issued for the review of the decision or determination of the board of appeals created by chapter 503 of the Laws of 1916. This board reversed a decision or determination of the superintendent of buildings of the borough of Brooklyn refusing to approve plans submitted by a prospective purchaser of certain property in that borough for a structure proposed to be erected on such property. The proposed structure was a riding academy and public stable with accommodations for from 90 to 100 horses, and it was to be erected on the easterly side of Franklin and Washington avenues (where they converge) between Malbone and Sterling streets. The superintendent of buildings placed his refusal to approve the plans upon the ground that it would be a violation of the resolutions of the board of estimate dividing the city into " use districts " or zones to permit a stable to be erected at the location in question. The board of appeals, upon an appeal taken by the architect of the proposed purchaser, reversed this decision and granted permission, subject to certain conditions, to erect the building. Thereupon the relator, the owner of adjacent property, claiming to be aggrieved by the action of the board of appeals, sued out the writ of certiorari which is now before the court for consideration upon the writ and the return thereto made by the board of appeals, as provided in section 719-a of the charter as amended by chapter 503, Laws of 1916.

As these recent statutes go much further in the exercise of the police power than has ever before been attempted by the legislature in this state, and since

they have as yet received but little judicial considera-
tion, matters of general application arising under
them, which are likely to affect property interests of
great magnitude, require and are worthy of the most
careful and deliberate consideration.

Upon the argument, the question of the constitution-
ality of the statutes referred to as a valid exercise of
the police power was expressly eliminated from con-
sideration, nor is that question raised in the briefs
submitted, and, therefore, it is not passed upon in the
decision of this application.

The statute authorizing the division of the city into
zones or districts is contained in sections 242-a and
242-b of the Greater New York Charter (Laws of 1901,
chap. 466). These sections were added by Laws of
1914, chapter 470, and amended by Laws of 1916, chap-
ter 497. As so amended the second section reads as
follows:

" Sec. 242-b. The board of estimate  and apportion-
ment may regulate and restrict the location of trades
and industries and the location of buildings designed
for specified uses, and may divide the city into dis-
tricts of such number, shape and area as it may deem
best suited to carry out the purposes of this section.
For each such district regulations may be imposed
designating the trades and industries that shall be
excluded or subjected to special regulations and
designating the uses for which buildings may not be
erected or altered. Such regulations shall be designed
to promote the public health, safety and general wel-
fare. The board shall give reasonable consideration,
among other things, to the character of the district,
its peculiar suitability for particular uses, the con-
servation of property values, and the direction of
building development in accord with a well considered
plan. The board shall appoint a commission to

21

recommend the boundaries of districts and appropriate regulations and restrictions to be imposed therein. Such commission shall make a tentative report and hold public hearings thereon before submitting its final report, at such time as said board shall require. Said board shall not determine boundaries of any district nor impose any regulations or restrictions until after the final report of a commission so appointed. After such final report said board shall· afford persons interested an opportunity to be heard at a time and place to be specified in a notice of hearing to be published for ten consecutive days in the City Record. The board may from time to time after public notice and hearing amend, supplement or change said regulations or districts but in case a protest against a proposed amendment, supplement or change be presented, duly signed and acknowledged by the owners of twenty per centum or more of the frontage proposed to be altered, or by the owners of twenty per centum of the frontage immediately in the rear thereof, or by the owners of twenty per centum of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by a unanimous vote of the board.''

The last sentence was added by the Laws of 1916.

At practically the same time when chapter 497 of the Laws of 1916 was enacted, there was also enacted chapter 503 of the Laws of 1916, which amended provisions of the charter relating to the enforcement of the building laws. By section 1 of this act, section 406 of the charter relating to the duties of the superintendent of buildings in each borough was amended so as to provide, among other things, that '' each superintendent of buildings shall have exclusive jurisdiction to require that the construction and alteration of all buildings hereafter constructed or altered shall

conform to such provisions of the labor law and other laws as may be applicable thereto.'' This provision, in my opinion, gives the superintendent power to refuse to approve plans for proposed buildings the erection of which would be in violation of the regulations adopted by the board of estimate in pursuance of section 242-b of the charter, as hereinafter stated.

By section 6 of chapter 503 of the Laws of 1916 chapter 14-a is added to the charter. This provides for a board of standards and appeals and a board of appeals. The board of appeals comprises certain individuals who take office by appointment and who, with the fire commissioner and the superintendents of buildings of the five boroughs, constitute the board of standards and appeals. Section 718-d of said article, which creates this board of appeals, reads as follows:

'' Sec. 718-d. The appointed members of the board of standards and appeals and the chief of the uniformed force of the fire department, exclusive of the other members, shall hear and decide appeals from and review any rule, regulation, amendment or repeal thereof, order, requirement, decision or determination of a superintendent of buildings made under the authority of title two of chapter nine of this act or of any ordinance or of the fire commissioner under the authority of title three of chapter fifteen of this act or of any ordinance, or of the labor law. No member of the board shall pass upon any question in which he or any corporation in which he is a stockholder or security holder is interested.

'' Hearings on appeals shall be before at least five members of the board of appeals, and the concurring vote of five members of the board of appeals shall be necessary to a decision.

'' The words board of appeals when used in this chapter refer to the said appointed members of the

board of standards and appeals and the chief of the uniformed force of the fire department, when acting under the powers conferred by this section."

Section 719, subdivision 1, provides for appeals " from any order, requirement, decision or determination made by any superintendent of buildings under the authority of title two of chapter nine of this act (comprising § 406, above referred to) or of any ordinance," except certain not material to this application.

Pursuant to section 242-b of the charter, above quoted, the board of estimate, after complying with the preliminary requirements of the section, passed a resolution dividing the city into " use districts," with different kinds of restrictions for residence districts, business districts and unrestricted districts, and prescribing regulations whereby stables are ex- cluded from residence and business districts, subject to a qualification hereinafter to be mentioned. Included in such resolution, and constituting part of section 7 of article II of said regulations, is the following provision:

" The Board of Appeals, created by chapter 503 of the Laws of 1916, may, in appropriate cases, after public notice and hearing, and subject to appropriate conditions and safeguards, determine and vary the application of the use district regulations herein established in harmony with their general purpose and intent as follows: * * *

" (e) Permit in a business district the erection of a garage or stable in any portion of a street between two intersecting streets in which portion or block there exists a public garage or public stable at the time of the passage of this resolution."

Under the plan adopted by the board of estimate dividing the city into use districts, Washington

avenue and Franklin avenue, at the location in question, with 100 feet in depth on both sides thereof, constitute a business district, as does also Malbone street, with 100 feet in depth on both sides. Sterling street, easterly from a point 100 feet east of Washington avenue is a residence district on both of its sides. The relator's premises are situated on the northerly side of Sterling street, between Washington and Bedford avenues and about 200 feet east of Washington avenue. According to the plans submitted the proposed public stable would extend for a distance, which would appear from the testimony to be about 60 feet, into the residence district on the northerly side of Sterling street, but the board of appeals in granting leave to erect the stable imposed as a condition that it should not extend into such residence district. Upon this point alone it would appear that the superintendent of buildings was justified in his refusal to approve the plans; and the board of appeals should, I think, have confirmed his action without prejudice to the right of the owner of the property to file new plans which should not invade the residence district with an unlawful structure. I think the board of appeals was limited to action upon the plans before it, and could not act upon other plans which might be submitted; and, since it did not approve those plans, it should have affirmed the action of the superintendent of buildings. It could, of course, indicate modifications and changes which would be necessary to have the plans meet its approval, but until proper plans should be presented it could not act thereon. Its decision was in effect to promise, in advance of any application by the owner of the property for approval of new plans which should meet the objection, that the board would approve such new plans upon appeal, whatever might be the attitude of the superintendent in respect

thereof, so far as this question was concerned. Such anticipatory approval of plans materially different and which were not before the board upon the appeal nor even in existence at the time, was, as I view it, not within the powers intended to be conferred upon the board under section 719 of the act, considering the very substantial reduction in the size of the proposed building made necessary by the action of the board and required to comply with the statutory provisions.

It is earnestly urged on the part of the relator that the board of estimate could not delegate to the board of appeals, by such a provision as that last above quoted (Resolution, art. II, § 7, subd. e), the discretionary powers vested in the board of estimate by the legislature. In this I think the relator is correct, as the law stood when this proceeding was instituted. The board of estimate having been vested by the legislature with the power of framing the regulations and restrictions provided for by the acts of 1914 and 1916, could not, in the absence of express legislative authority, depute to an inferior board the power to dispense in its discretion with compliance with such regulations. If the board of estimate had such a power to be exercised or not in its discretion, it could not delegate such discretion to a subordinate administrative or ministerial board. *Birdsall* v. *Clark,* 73 N. Y. 73; *Phelps* v. *City of New York,* 112 id. 216, 220; *Ontario Knitting Co.* v. *State,* 205 id. 409, 416. The question has ceased to be of importance for future cases, because of the amendment made this year to section 242-b, which expressly authorizes the board of estimate to confer such power on the board of appeals. This case must, however, be governed by the law as it stood at the time of the institution of this proceeding.

But assuming, for the purpose of argument, that section 7 of article II of the board of estimate's reso-

lution, above quoted in part, was in all respects valid
under the former law, the question remains whether
the conditions under which a stable may be permitted
by the board of appeals to be erected in a business dis-
trict existed. It appears that at the time of the adop-
tion of the regulations by the board of esti-
mate there was and still is a stable on the
north side of Sterling street, more than one
hundred feet east of Washington avenue, known
as Givan's stable, and that on the easterly side of
Flatbush avenue, and extending through to the
westerly side of Washington avenue, directly opposite
the premises in question, is a riding academy known as
Deegan's Riding Academy, which consists of stables
and a yard, some part of the stable buildings being
apparently within one hundred feet west of the west-
erly line of Washington avenue, although this does not
clearly appear from the plan submitted.

It is urged that these stables bring this case within
the provisions of subdivision e of section 7 of article
II of the regulations. It is contended that the word
" block " used in that subdivision means the territory
bounded by four streets, and that, therefore, Givan's
stable is in the same block as the stable proposed to be
erected. I cannot concur in this construction of the
word " block " as used in subdivision e. In a techni-
cal sense the word " block " may and often does desig-
nate such a territory, sometimes called a " square
block; " but it is also commonly used to designate that
section of a " square block," so called, fronting on a
street between two intersecting streets. The context
clearly shows that it was used in the latter sense in
subdivision e, being practically equivalent in meaning
to the word " portion " as used in said subdivision,
which clearly means " front portion." Givan's stable
is not, therefore, within the portion or block in which

it is proposed to erect the stable and riding academy in question here.

It is also urged that the words " any portion of a street between two intersecting streets in which portion or block," as used in subdivision e, include both sides of Washington avenue and land to the depth of 100 feet back on each side, and hence that the stables on the Deegan premises are in the same " portion or block " as the proposed stable. I understand, however, that the entrance to the Deegan's Riding Academy is on Flatbush avenue, and that there is a high fence along the Washington avenue side. For the purposes of subdivision e, I think these stables must be considered as situated on Flatbush avenue, where the public entrance is, that is, that a stable is not to be deemed in any particular " portion or block " within the meaning of subdivision e, unless there be a public entrance thereto within such " portion or block."

For these reasons the board of appeals did not, in my opinion, have authority under subdivision e to grant permission to erect the proposed building.

The writ of certiorari is sustained and the decision of the board of appeals brought up for review is reversed. As the application does not show the existence of any facts which, under the provisions of subdivision 5 of section 719-a, would justify the imposition of costs against the board, no costs are allowed.

Ordered accordingly.