THE PEOPLE OF THE STATE OF NEW YORK ex rel. ELIZABETH M.
    BEINERT, Respondent, *v.* RUDOLPH P. MILLER and Others,
    Constituting the Board of Appeals Created by Chapter 503
    of the Laws of 1916,* and ALBANY HEIGHTS REALTY COM-
    PANY, Appellants, Impleaded with ADOLPH VOGT, Defendant.

Second Department, May 16, 1919.

Municipal corporations — city of New York — resolution by board
    of estimate and apportionment under Greater New York charter,
    as amended, restricting erection and use of certain buildings in
    business districts — jurisdiction of board of appeals to annul
    order of board of estimate and apportionment denying applica-
    tion for erection of riding academy — resolution construed —
    word " block " defined.

Under chapter 503 of the Laws of 1916, amending the Greater New York
    charter, the board of estimate and apportionment by resolution divided
    the city into three classes of districts and created a " business district "
    at Franklin and Washington avenues between Malbone and Sterling
    streets with one hundred feet in depth on each side thereof, and providing
    that in such districts buildings should not be used for a " stable for more
    than five horses."   Said resolution further provided that the board of
    appeals may " subject to appropriate conditions and safeguards, deter-
    mine and vary the application of the use district regulations herein
    established in harmony with their general purpose and intent as follows:

---

* See Greater N. Y. charter (Laws of 1901, chap. 466), § 718d *et seq.*, as
added by Laws of 1916, chap. 503. . Since amd. by Laws of 1917, chap. 601.
— [REP.

* * * (e) Permit in a business district the erection of a garage or stable in any portion of a street between two intersecting streets in which portion or block there exists a public garage or public stable at the time of the passage of this resolution."

*Held*, that a finding by the board of appeals that directly opposite the plot for which application for the erection of a riding academy was made and within the same business district there existed a public stable at the time of the passage of the resolution and the imposition by said board of certain conditions guarding the proposed use " in harmony with the general purpose and intent " of the resolution and permitting the erection of the proposed structure was within their jurisdiction and did not alter or modify the zoning resolution.

The board of appeals acted in an administrative capacity in ascertaining the facts and in determining what conditions would safeguard the system.

The word " block " as used in the resolution does not mean that area of land bounded by city streets but means that portion which consists of the area restricted to business purposes because within 100 feet of the street so restricted.

APPEAL by the defendants, Rudolph P. Miller and others, constituting the board of appeals, and by Albany Heights Realty Company, from a final order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 21st day of June, 1917, sustaining a writ of certiorari and annulling the proceedings and determination referred to in said order.

An appeal is also taken from an order entered in said clerk's office on the 9th day of January, 1918, resettling the prior order.

On the 29th day of November, 1916, one Adolph Vogt, who held a contract for the purchase of property on the easterly side of Washington and Franklin avenues, where they come together between Malbone and Sterling streets in the borough of Brooklyn, filed with the superintendent of buildings an application and plan for the erection of a riding academy on a portion of said property. The application was denied on the ground that the erection of such a structure would violate the resolution of the board of estimate and apportionment regarding district uses, sometimes called the Building Zone Resolution, adopted on July 25, 1916. Thereupon said Vogt, through his architect, appealed to the board of appeals from the determination of the superintendent. The board of appeals, after a hearing regularly had, reversed

the decision of the superintendent on certain conditions as to the location and construction of the proposed riding academy. Upon a writ of certiorari sued out by the owner of a private residence nearby, the determination of the board of appeals was annulled. From the order of annullment the board of appeals, through the corporation counsel of the city of New York, and the owner of the plot for which the application was made, who was permitted by order of the court to intervene, have appealed to this court.

*William E. C. Mayer* [*William P. Burr*, Corporation Counsel, *Terence Farley* and *William T. Kennedy* with him on the brief], for the appellant Board of Appeals.

*William H. Good*, for the appellant Albany Heights Realty Company.

*Robert H. Koehler*, for the respondent

BLACKMAR, J.:

The respondent claims that the board of estimate and apportionment had no authority to delegate to the board of appeals the power to modify the zoning resolution, with which proposition we agree; and that the portion of the resolution that purported to authorize the board of appeals to act in cases like the one before us was an attempt at such unlawful delegation, from which proposition we dissent.

Chapter 497 of the Laws of 1916 (amdg. Greater N. Y. charter [Laws of 1901, chap. 466], § 242b, as added by Laws of 1914, chap. 470)* provided, among other things, that "The board of estimate and apportionment may regulate and restrict the location of trades and industries and the location of buildings designed for specified uses, and may divide the city into districts of such number, shape and area as it may deem best suited to carry out the purposes of this section." Acting upon an elaborate report of a commission appointed pursuant to the act to recommend the boundaries of districts and appropriate regulations and restrictions to be imposed therein, the board of estimate and apportionment, by resolution duly adopted on July 25, 1916, divided the city into three classes of

---

* Since amd. by Laws of 1917, chap. 601.— [REP.

districts: (1) Residence districts, (2) business districts, and (3) unrestricted districts. Franklin and Washington avenues between Malbone and Sterling streets, with 100 feet in depth on each side thereof, were created a business district. Within business districts, buildings erected or designed for certain specified trades, industries or uses were prohibited. Among such forbidden uses is a " stable for more than five horses."

The superintendent of buildings, a statutory officer, has jurisdiction to require that the construction and alteration of all buildings shall conform to such laws as may be applicable thereto. (Laws of 1916, chap. 503, amdg. Greater N. Y. charter, §§ 406, 411.)* As the zoning resolution had the force of law, the superintendent rejected the application on the ground that the proposed building was prohibited in a business district. By the law last cited the board of appeals has power to entertain appeals from the superintendent and to affirm, reverse or modify any determination; and to that end it was given all the powers of the officer from whom the appeal was taken. (See Greater N. Y. charter, §§ 718d, 719, as added by Laws of 1916, chap. 503.)†

The zoning resolution (§ 7) provides that the board of appeals may, " subject to appropriate conditions and safeguards, determine and vary the application of the use district regulations herein established in harmony with their general purpose and intent as follows: * * * (e) Permit in a business district the erection of a garage or stable in any portion of a street between two intersecting streets in which portion or block there exists a public garage or public stable at the time of the passage of this resolution."

The board of appeals found that directly opposite the plot for which application for the erection of a riding academy was made, and within the same business district, there existed a public stable at the time of the passage of this resolution. The board, therefore, imposed certain conditions that safeguarded the proposed use " in harmony with the general purpose and intent " of the resolution, and permitted the proposed structure.

---

* See, also, Laws of 1918, chap. 617, since amdg. said § 406.— [REP.

† See, also, Laws of 1917, chap. 601, since amdg. said § 718d.— [REP.

In doing this we think the board of appeals did not alter or modify the zoning resolution. The resolution, as we read it, provides that a stable may be erected where another exists in the same portion of the street, under such conditions as the board of appeals may prescribe to safeguard the true intent of the resolution. In this respect the board of appeals acts in an administrative capacity, to ascertain the facts and determine what conditions will safeguard the system. In this case the board made the investigation; it prescribed, as a condition for the protection of the adjacent residential district, that the building should be limited to the business district and that solid walls, without openings, should be built on the side toward the residential district. All this seems in harmony with and not in derogation of the resolution. The delegation of administrative functions in aid of carrying out a law, even involving *quasi* legislative or judicial powers, is common in the modern system of law. An exception to the law *delegatus non potest delegare* always has existed in the case of granting legislative powers to municipal corporations. The complexity of our modern social system and the impracticability of direct control over the application of general rules of law by the law-making body, have in a degree relaxed the strict application of the doctrine where public rights are involved. A familiar example, sustained by the courts, is the delegation of rate-making, which is a legislative function according to the United States Supreme Court (*Prentis* v. *Atlantic Coast Line*, 211 U. S. 210) or a *quasi* judicial one according to our Court of Appeals (*People ex rel. Central Park, etc., R. R. Co.* v. *Willcox*, 194 N. Y. 383), to the Interstate Commerce Commission and the Public Service Commissions of the several States. It would be physically impossible for the board of estimate and apportionment, which in its manifold powers and duties is a near approach to the commission form of government for a city that in population, wealth and industries is greater than many independent States, itself to determine and vary the application of use district regulations as provided by section 7 of the resolution. From the necessity of the case, the power must be conferred on some subordinate body or board. For an exposition of this subject we refer to *Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.* (191 N. Y.

Second Department, May, 1919.    [Vol. 188.

123). In fine, the function of the board of appeals in this respect is not to vary the resolution but to " determine and vary the *application* of the use district regulations    *    *    * in harmony with their general purpose and intent." We think the board of appeals had jurisdiction to make the determination that was annulled at Special Term.

But it is urged that the other public stable did not exist in the location required by the resolution, in that, although within 100 feet of the street, its main entrance was in another street and that it was separated from Franklin and Washington avenues by a fence.

An examination of the use district maps that are part of the resolution shows that the designation of the districts was by streets, and that the areas were determined by a limitation of the depth to which the restrictions extend on each side of the street. Usually this is 100 feet, and it is so in the case of Franklin and Washington avenues designated for business use. The resolution authorized the board of appeals, under proper conditions and safeguards, to " Permit in a business district the erection of a garage or stable in any portion of a street between two intersecting streets in which portion or block there exists a public garage or public stable." We agree with the learned justice who presided at Special Term that the word *block* does not mean, as in ordinary parlance, that area of land bounded by city streets. (100 Misc. Rep. 327.) Such meaning is inconsistent with the wording of the resolution, in that it would justify the erection of a public stable because another existed in an unrestricted area on the other side of the block, several hundred feet away. On the other hand, it cannot mean the frontage of the street, for in such case the words would be superfluous, for the words " portion of a street between two intersecting streets " sufficiently indicate that meaning. The word *block* must mean that portion which consists of the area restricted to business purposes because within 100 feet of the street so restricted. So construed, the stable on the other side of Franklin avenue meets the requirement of the resolution. And this is consistent with the general purpose of the resolution, for a public stable or a public garage in a street is objectionable whether its entrance is in the street in question, or around the corner, or

in a street to the rear. The theory of the law is that where the uniformity of a business use district between two intersecting streets is impaired by a public stable or garage, another may be erected. We think the condition existed that justified the permit granted by the board of appeals.

The order should be reversed and the determination of the board of appeals reinstated, with costs.

JENKS, P. J., MILLS, RICH and JAYCOX, JJ., concurred.

Order reversed and determination of the board of appeals reinstated, with costs.