THE PEOPLE OF THE STATE OF NEW YORK ex rel. MICHAEL J. SMITH and Others, Respondents, *v.* WILLIAM E. WALSH and Others, Constituting the Board of Appeals of the City of New York, Appellants.

SPENCER ALDRICH, Intervenor, Appellant.

Second Department, December 19, 1924.

**Municipal corporations — building zone resolutions — intervenor sought permit to erect public garage on corner of Prospect avenue and Eleventh avenue in Brooklyn — there was large laundry and stable on opposite side of Prospect avenue within same block at time building zone resolution was passed — there was garage on same side of Prospect avenue in same block not in existence when building zone resolution was passed — Eleventh avenue is within business district but there is no garage in that block — board of appeals after personal inspection granted permission under authority of building zone resolution, § 7, subd. e — board of appeals did not specifically find under building zone resolution, § 20, that there were practical difficulties or unnecessary hardships in way of carrying out strict letter of building zone resolution — board of appeals had power to grant permit under building zone resolution, § 7, subd. e, without deciding that application came within building zone resolution, § 20 — if said § 20 must be considered it is not necessary for board of appeals specifically so to find where facts show practical difficulties or unnecessary hardships in case permit is not granted — facts do show said conditions — building zone resolution, § 7, subd. g, which requires consent of eighty per cent of frontage applies to Eleventh avenue side — board of appeals may grant permit as to said street under building zone resolution, § 20 — not necessary for applicant to show attempt to secure consents where evidence is that necessary consents cannot be obtained — not necessary to determine whether large garage is needed in locality.**

The board of appeals of the city of New York had the power after a personal inspection to grant the intervenor's application for the construction of a public garage on the corner of Prospect avenue and Eleventh avenue, facing Prospect avenue, in Brooklyn, though the proposed garage was to be erected in a business district and would contain more than five motor vehicles, under the authority of subdivision (e) of section 7 of the building zone resolution which provides that the board of appeals may permit in a business district the erection of a garage in any portion of a street between two intersecting streets in which portion there exists a garage for more than five motor vehicles or a stable for more than five horses at the time of the passage of the building zone resolution, for it appears by the evidence that at the time the building zone resolution was

passed there existed on Prospect avenue in the same block in which the intervenor proposed to erect his garage but on the opposite side of the street a large laundry and a stable for sixty horses; that there also existed a garage for more than five automobiles which had been erected on the same side of the street as the inter-venor's proposed garage and in the same block under a permit granted to the owner after the passage of the building zone resolution.

Subdivision (e) of section 7 of the building zone resolution contains ample authority to support the action of the board of appeals so far as the Prospect avenue side of the property is concerned and it was not necessary for the board to grant the application under section 20 of the building zone resolution, which authorizes the board to permit such an erection as applied for in this case where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of the building zone resolution. It was not necessary, therefore, for the board of appeals specifically to find that if the permit were not granted the intervenor would be subject to practical difficulties or unnecessary hardships in the use of the property.

However, if the application by the intervenor came within the provision of said section 20 so that the board of appeals would be required to take into con-sideration that section in granting the permit, the failure of the board to make a specific finding that there existed practical difficulties or unnecessary hard-ships will not defeat its permit, for the evidence shows that such difficulties or hardships did exist in this case in that the property cannot be profitably used for residence purposes or stores.

There were no garages in existence on the Eleventh avenue side of the proposed garage within the block at the time the building zone resolution was passed, and, therefore, subdivision (g) of section 7 of the building zone resolution, which requires that an applicant for permission to erect a garage must secure the con-sent of eighty per cent of the frontage within the block, applies.

But the failure of the intervenor to secure the consents did not deprive the board of appeals of the right to exercise the authority granted to it by section 20 of the building zone resolution and it had the right, therefore, to grant the intervenor's application, so far as Eleventh avenue is concerned, on the ground that there were practical difficulties or unnecessary hardships to the strict enforcement of the letter of the resolution as against the intervenor, and it was not necessary for the intervenor to attempt to procure the consents since it appears that it would have been impossible for him to so do.

It is unnecessary to determine whether or not another large garage is needed in the locality in question.

APPEAL by the defendants, William E. Walsh and others, and by the intervenor, Spencer Aldrich, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 29th day of July, 1924, sustaining an order of certiorari and reversing the decision of the board of appeals of the city of New York which granted intervenor's appeal from the determination of the superintendent of buildings of the borough of Brooklyn, denying his application for a permit to erect a public garage in a business district.

*Henry J. Shields* [*George P. Nicholson, Corporation Counsel, John F. O'Brien* and *William T. Kennedy* with him on the brief], for the defendants, appellants.

*John J. McBride,* for the intervenor, appellant.

*John J. Barry,* for the respondents.

YOUNG, J.:

The intervenor in this proceeding submitted to the superintendent of buildings an application and plans for a permit to erect a public garage on his premises 1101–1113 Prospect avenue, Brooklyn. This property is situated at the corner of Eleventh avenue and the two intersecting avenues are business districts. The site of the proposed garage is 120 feet on Prospect avenue and 100 feet on Eleventh avenue. The intervenor's application was denied by the superintendent of buildings because contrary to section 4 of the Building Zone Resolution which prohibited a public garage for more than five motor vehicles in a business district.* The intervenor then appealed to the board of appeals for a variation of the use district regulation of the Building Zone Resolution so as to permit the erection of this garage, and a public hearing was had.

It appears from the plot diagram (page 154) that the block in which the applicant's property was situated was vacant land except for a one-story garage building on Prospect avenue abutting on applicant's property, and that at the time of the adoption of the Building Zone Resolution, July 25, 1916, and as amended December 21, 1917, there was a stable for sixty horses at 1100 Prospect avenue between Eleventh avenue and Terrace place. This stable is on Prospect avenue directly opposite the property in question.

A committee of the board of appeals made a personal inspection of the neighborhood in question and filed the following report:

" A Committee of Inspection, composed of Chairman Walsh, Chief Kenlon, Messrs. Holland, Beatty, Boulton and Connell, visited and inspected these premises and generally surveyed the site and its environs.

" This application is for variation of the Building Zone Resolution, under section 7-e,† seeking permission to erect a public garage on the northeast corner, formed by the intersection of 11th and Prospect Avenues, 100 ft. deep on 11th Avenue and 120 ft. frontage on Prospect Avenue. Both these highways are now designated on the zone maps as business streets.

" Directly opposite on Prospect Avenue, the entire street front, in fact, the entire square block, with the exception of a plot of

---

* See Min. Bd. Est. & Apport. City of New York 1916, vol. 5, p. 4244, § 4, subd. (a), ¶ 15; Id. 1917, vol. 8, p. 7420; Cosby's Code of Ordinances (Anno. 1922), pp. 583, 584. — [REP.

† See § 7, subd. (e). — [REP.

ground 60 ft. by 100 ft., is occupied by a wet wash laundry, with all its attendant uses.

" Immediately adjoining the premises under appeal, on the northerly side of Prospect Avenue and running from Terrace Place, a residence street, there exists a public garage of 200 ft. frontage, returning on Terrace Place 224 ft., permission to erect which was granted by this Board under applications 385–20–BZ and 751–20–BZ, section 7-e* being the basis of appeal. The granting of this application, therefore, filling out the Prospect Avenue front contiguous to the existing garage, would, in the opinion of the Committee, be an equitable adjustment of the zoning regulations.

" Examination of applications made affecting this street frontage show it was the opinion of the Board, regarding the establishment of the basis of appeal, that there seemed substantial community requirement for automobile storage and accommodation, and that the community interest would best be served and the integrity of the zoning resolution maintained by permitting the now existing garage to be erected directly opposite the steam laundry plant, which plant, from the viewpoint of design, material, general construction, utility and operation, is not conducive to residential development, and the Board, therefore, permitted the garage on Prospect Avenue.

" The basis of appeal having been established in two former cases on this street frontage, the Committee of Inspection, with the idea of garage segregation in mind, is of the opinion that this application should be granted, with such restrictive provisions as will safeguard the properties to the north on Sherman Street, and prohibiting garage encroachment in the residence area of Sherman Street."

This report was adopted by the board of appeals, and various owners of property in the neighborhood instituted this proceeding to review the decision of the board of appeals. The petition alleges the ownership by petitioners of neighboring property and the proceedings before the board, and claims that the character of the neighborhood is such that to construct a garage on the corner in question would materially affect the owners of houses and property in the section; that houses in the neighborhood are two-family houses in which the owners live and which they bought for the purpose of making permanent homes; and that outside of the laundry building located on Prospect avenue below Eleventh avenue and one garage east of the proposed garage there are no business places in the neighborhood; that Public School No. 154 is located on the northeast corner of Eleventh avenue and Sherman

---

* See § 7, subd. (e).— [Rep.

street in close proximity to the proposed garage and would be a menace to the children; that by reason of the surroundings, the premises in question should not be devoted to garage use and the variation granted by the board of appeals causes unnecessary hardship and irreparable damage to relators, and that the decision of the board of appeals is without basis in fact or law and not in harmony with the general purpose and intent of the Building Zone Resolution.

An order was made permitting the owner of the property in question, Spencer Aldrich, to intervene and be made a party defendant.

The board of appeals filed its return in which it set up the provisions of the charter and the Building Zone Resolution, to which I shall hereafter refer. It admits most of the allegations of the petition except that it denies that the erection of a garage will materially affect the owners of houses in the neighborhood, and that it will cause unnecessary hardship and irreparable damage, etc., or that it is unwarrantable, illegal and unjust to relators and a violation and abuse of discretion by the board. It further returns that it exercised its judgment and discretion reasonably and in good faith, in conformity with law, etc., and asks that the writ be quashed and the proceeding dismissed.

The intervenor filed an answer substantially like the return of the board of appeals.

The learned Special Term made an order that respondents and the intervenor might within five days thereafter amend their answers so as to deny the allegations in the petition that there was no present need of a garage in the section in question, and upon serving and filing such amended answers referred the proceeding to Hon. Abel E. Blackmar, referee, to take evidence on the issues presented and to report with his opinion to the court, and that in the event that said answers are not so amended, the writ of certiorari was sustained and the decision of the board of appeals reversed and annulled. The learned Special Term in its opinion held that there was no authority to permit the building of a garage under subdivision (e) of section 7 of the Building Zone Resolution because the garage in the same block did not exist when the resolution was passed, and that the return did not show that the board had determined that the strict enforcement of the resolution entailed practical difficulties or unnecessary hardships, and, therefore, varied the provisions pursuant to section 20 of the Building Zone Resolution. It also held that the principal question was whether a large garage was needed in the locality. The learned Special Term overlooked the

14

fact that although there was no garage in the street when the resolution was passed, there was a stable for sixty horses, which fact made the provision of subdivision (e) of section 7 applicable.

The respondents and the intervenor did not amend their answers in conformity with the order, and the provision thereof sustaining the writ and reversing the decision of the board of appeals, therefore, became effective, and the board of appeals and the intervenor appealed to this court.

The Building Zone Resolution, adopted July 25, 1916, as amended December 21, 1917, provided, among other things, as follows:

" § 7. Use district exceptions. The Board of Appeals, created by Chapter 503 of the Laws of 1916, may, in appropriate cases, after public notice and hearing, and subject to appropriate conditions and safeguards, determine and vary the application of the use district regulations herein established in harmony with their general purpose and intent as follows: * * *

" (e) Permit in a business district the erection or extension of a garage or stable in any portion of a street between two intersecting streets in which portion there exists a garage for more than five motor vehicles or a stable for more than five horses at the time of the passage of this resolution; * * *

" § 20. Rules and regulations; modifications of provisions.— The Board of Standards and Appeals, created by Chapter 503 of the Laws of 1916, shall adopt from time to time such rules and regulations as they may deem necessary to carry into effect the provisions of this resolution. Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution the Board of Appeals shall have power in a specific case to vary any such provision in harmony with its general purpose and intent, so that the public health, safety and general welfare may be secured and substantial justice done."*

It is claimed by appellants that this case is controlled by the decision of this court in *People ex rel. Beinert* v. *Miller* (188 App. Div. 113). In that case it was held that under subdivision (e) of section 7 a finding by the board of appeals that directly opposite the plot for which application for the erection of a riding academy was made and within the same business district, there existed a public stable at the time of the passage of the resolution and the imposition by the board of certain conditions in harmony with the general intent and purpose of the resolution and permitting the

---

* See Min. Bd. Est. & Apport. City of New York 1916, vol. 5, pp. 4245, 4246, 4250; Id. 1917, vol. 8, p. 7422; Cosby's Code of Ordinances (Anno. 1922), pp. 585, 586, 594.— [REP.

erection of the proposed structure was within their jurisdiction and did not alter or modify the Building Zone Resolution.

As to the Prospect avenue frontage, *People ex rel. Beinert* v. *Miller (supra)* seems to be a case on all fours with the case at bar. The facts in both cases are quite similar. The application there was for the erection of a riding academy, which is in effect the same as for a stable and came within the same section and subdivision of the Building Zone Resolution as the case at bar, which is an application to erect a garage in a business district. In the *Beinert* case there existed  directly opposite the plot in question a stable. That is also true in the case at bar and in addition there existed at the time of the application a public garage on the same street immediately adjoining intervenor's property.

It was also held by this court in *People ex rel. Bruckner* v. *Walsh* (209 App. Div. 909) that in determining whether a garage permit should be granted because of the existence of another garage in the same portion of the street at the time of the passage of the resolution, such time was when the amendment was adopted, December 21, 1917, and that where such garage existed at that time the permit for the erection of another garage was properly granted.

In neither of the cases last cited were the provisions of section 20, above quoted, referred to, and were it not for more recent decisions, and particularly one by the Court of Appeals, I would have no hesitation in holding that the provisions of subdivision (e) of section 7 and section 20 were of distinct and separate application. In other words, where a garage for more than five motor vehicles or a stable for more than five horses existed in the same portion of the street in a business district, the board of appeals might with appropriate conditions and safeguards grant a permit for the erection of another garage in the same  portion of the street as provided by subdivision (e) of section 7 without considering whether there were practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of the resolution as provided in section 20, and that the provisions of the latter section were intended to cover  cases not otherwise specifically mentioned.         \

But in *People ex rel. Sheldon* v. *Board of Appeals* (234 N. Y. 484) the Court of Appeals reviewed the provisions of the New York city charter and the Building Zone Resolution. In that case application had been made to the superintendent of buildings to permit the erection of a business building upon a plot of land, a greater part of which was in a residence district, and the court held that upon appeal to the board of appeals from the superin-

tendent's decision, it was within the power of the said board of appeals to vary, *i. e.*, to modify or alter in form or substance the application of the regulations of the board of estimate and apportionment by permitting the erection of the proposed building, where, as the result of investigation, it had determined that there existed unnecessary hardships in the way of carrying out the strict letter of the provisions of the Building Zone Resolution, and that by permitting such erection substantial justice would be promoted to the property owners and the public interest. The application in that case came within the provisions of subdivision (c) of section 7, which, as amended on March 23, 1917, gave the board of appeals the right to " permit the extension of an existing or proposed building into a more restricted district under such conditions as will safeguard the character of the more restricted district." *    It will be seen, therefore, that the only material difference between that case and the case at bar, so far as the facts are concerned, is that they come under different subdivisions of the same section. But the Court of Appeals quoted and seems to have applied the provisions of section 20 of article 5 of the Building Zone Resolution, above quoted. In that case, however, the board of appeals in its resolution did determine that in its opinion there were unnecessary hardships in the way of carrying out the strict letter of the Building Zone Resolution in that specific case, while in the case at bar the resolution of the board of appeals contains no such recital. Again, in the *Sheldon* case, the Special Term and the Appellate Division had determined that the action of the board of appeals was without power because it in effect repealed or set at naught the zoning regulations adopted by the board of estimate and apportionment. The real question determined by the Court of Appeals, therefore, was whether or not the board of appeals was authorized to act in the manner it did under subdivision (c) of section 7 and section 20, and that court did not, I think, expressly hold that the board of appeals would not be authorized to grant the permit then considered under the provisions of subdivison (c) of section 7 alone and without regard to the provisions of section 20.

In *People ex rel. Kannensohn Holding Corporation* v. *Walsh* (120 Misc. 467) relator's application to erect a garage partly in a business district and partly in an unrestricted district in Brooklyn was denied by the superintendent of buildings, whose decision was affirmed by the board of appeals. It did not appear from the

* See Min. Bd. Est. & Apport. City of New York 1916, vol. 5, pp. 4245, 4246; Id. 1917, vol. 2, p. 1622; Cosby's Code of Ordinances (Anno. 1922), pp. 585, 586.— [Rep.

resolution of the board what the particular ground of its decision
was except that there was opposition on the part of neighboring
owners, and that a committee of the board inspected the premises
and recommended denial. Upon a writ of certiorari, Mr. Justice
FABER, who decided the *Bruckner Case* (*supra*), at Special Term
said, among other things, that it did not appear from the return
that the board had decided the question of " practical difficulties "
and " unnecessary hardships " under section 20 of the Building Zone
Resolution, and cited the *Sheldon Case* (*supra*), where that question
was directly determined. He held that there was an arbitrary
exercise of discretion by the board; that there had been discrimi-
nation which was illegal, and that the board having failed by its
return to show that it decided the appeal on the ground of practical
difficulties, etc., or any apparently good reason, the matter was
before him on the merits and he reached the conclusion that the
decision of the board was contrary to the weight of evidence and
illegal and reversed its decision.

In *People ex rel. Parry* v. *Walsh* (121 Misc. 631; affd., by this
court, 209 App. Div. 889) relators sought to build a garage in a
business district and their application was denied by the board
of appeals. Upon a writ of certiorari, Mr. Justice VAN SICLEN
made a ruling similar to that of Mr. Justice FABER in the case
last cited. Respondents in the present case relied on the two
cases last cited and the *Sheldon* case as authority for the proposition
that the decision of the board must show that it has determined that
there are both " practical difficulties " and " unnecessary hardships,"
etc., and the learned Special Term was of the same opinion. (See
71 N. Y. L. J. July 12, 1924, p. 1335.)

But, as I have already pointed out, the decision in the *Sheldon*
case does not necessarily have that effect. The other two cases, it
will be observed, were where the board of appeals had denied the
applications and the effect of the decision at Special Term was that
no good reason existed for such denial, but I cannot agree with the
principle laid down in those cases that it is necessary in all applica-
tions of this character for the board to decide not only that the facts
bring the application within section 7 and the appropriate sub-
division thereof, but also, as prescribed by section 20, that prac-
tical difficulties and unnecessary hardships in carrying out the strict
letter of the law do or do not exist. The board of appeals may or
may not grant these applications in particular cases, but, of course,
the denial thereof must have some reasonable basis in harmony with
the Building Zone Resolution, and not be purely arbitrary. In the
present case the basis of the board's determination seems to have
been that permission had already been granted and a garage

erected adjoining the one proposed because there seemed to be a need for automobile storage and the steam laundry plant directly opposite was not conducive to residential development, and that they granted the present application with the idea of garage segregation with proper restrictions, etc. In my opinion, this ground for a variation of the use district regulations was in harmony with their general purpose and intent within the meaning of section 7.

But, even if we assume that all these applications come within the provisions of section 20, and that the question of practical difficulties and unnecessary hardships must in all cases be determined, it is not necessary, in my opinion, that the decision of the board as contained in its resolution should use the precise language of the statute. Nor perhaps is it even necessary that the precise ground of the decision should be recited in the resolution, if it sufficiently appears from the record upon which the board acted that that question was considered and determined. So, in the case at bar, it may be gathered from the resolution of the board that practical difficulties and unnecessary hardships did exist in this case. Furthermore, it is apparent from a consideration of the record that it was determined by the board that such difficulties and hardships existed. There was a steam laundry directly opposite the property in question, occupying practically the entire block, in which was a garage and stable of the character specified in subdivision (e) of section 7. Adjacent to the property in question was another public garage, extending into a residence district as well, for which a permit had been granted by the board of appeals. An affidavit was presented showing that a building containing stores and apartments had been erected on the southeast corner of Prospect avenue and Terrace place and the tenants complained of the steam laundry and that stores and apartments could not profitably be maintained in that locality by reason thereof. There was evidence, therefore, before the board that this property could not be made profitable either for residence or ordinary business purposes. This being so, it seems reasonably clear that practical difficulties and unnecessary hardships did exist, and it was within the province of the board, therefore, to grant the intervenor a permit to use his property in the only way which under the circumstances appeared to be available.

A more serious question, however, arises from the fact that the proposed garage fronts not only on Prospect avenue, but also on Eleventh avenue. The frontage of the property on Prospect avenue comes literally within the province of subdivision (e) of section 7 of the Building Zone Resolution. But the frontage on Eleventh avenue does not because, although that portion of Eleventh avenue

is within a business district, it is not a portion of a street in such a district between two streets in which there exists a garage. There is no existing garage on the portion of Eleventh avenue in question. It is, therefore, urged by respondents that this application to the board of appeals is governed by subdivision (g) of section 7 of the Building Zone Resolution which provides as follows:

" Permit in a business or residence district the erection of a garage provided the petitioner files the consents duly acknowledged of the owners of 80 per cent. of the frontage deemed by the Board to be immediately affected by the proposed garage. Such permit shall specify the maximum size or capacity of the garage and shall impose appropriate conditions and safeguards upon the construction and use of the garage."*

It is, therefore, insisted by respondents that as a prerequisite to the granting of this application, the board should have designated a frontage immediately affected by the proposed garage and the intervenor should have obtained and filed the consents of the owners of eighty per cent of such frontage.

On the other hand, it is argued by the intervening appellant that subdivision (g) of section 7 cannot be applied to this case without depriving subdivision (e) of section 7 of its force and effect in the precise situation which it specifically describes, and he urges that the two subdivisions of said section should be harmonized and subdivision (e) of section 7 given effect in the specific circumstances therein described and subdivision (g) of section 7 in circumstances not especially mentioned and provided for in subdivision (e) of section 7, and that a more general provision cannot be so distorted as to repeal or nullify a specific provision.

I do not think that this argument at all meets the situation Of course, the provisions of subdivision (e) of section 7 and subdivision (g) of section 7 must be considered to apply to cases which come within their meaning. Subdivision (e) of section 7 was, of course, clearly intended to apply to a proposed garage in a portion of a street where there was an existing garage at the time of the passage of the resolution. But it is equally clear that subdivision (g) of section 7 was intended to apply to the erection of a garage in a business or residence district where no garage in the portion of the street affected then existed. Under the language of the two subdivisions of said section, therefore, it seems plain that if the intervening appellant's proposed garage fronted only upon Prospect avenue, subdivision (e) of section 7 would control, but as it also fronts on Eleventh avenue, where there is no existing garage, the

---

* Added Sept. 21, 1917; Min. Bd. Est. & Apport. City of New York 1917, vol. 5, p. 4999; Cosby's Code of Ordinances (Anno. 1922), pp. 585, 586.— [REP.

provisions of subdivision (g) of section 7 become effective and require that the preliminary steps provided by that subdivision should be taken. If the application of subdivision (g) of section 7 to this proposed garage nullifies the provisions of subdivision (e) of section 7, as argued by appellant, it is just as plain that the applica- ation of subdivision (e) of section 7 nullifies the provisions of sub- division (g) of section 7. But, in my opinion, there is no question of nullification. The provisions of these two subdivisions of said section must be applied in accordance with the plain intent of the resolution. The board of appeals has no power to apply the provisions of subdivision (e) of section 7 solely to the exclusion of those of subdivision (g) of section 7, where the case plainly comes within the language of the latter subdivision.

Again, it is no answer to this proposition to say that the board has so restricted the erection of the proposed garage as to safeguard the frontage on Eleventh avenue by requiring that there be no exits or entrances thereon, etc. Notwithstanding all this the pro- posed building will still be a garage, whether it may be entered or left on Eleventh avenue or not, and will still be upon a business street where there is no existing garage. Its erection, therefore, without the consent of the property owners upon a frontage fixed by the board of appeals would be a violation of the Building Zone Resolution and beyond the power of the board, unless such power is derived from other provisions.

But does it follow that the permit for the erection of this garage cannot be sustained upon any other ground? May not the broad provisions of section 20 be applied to this particular case? I have already pointed out that there was evidence before the board to show that this property was not available for residence or ordinary business purposes, and that so far as the record shows, a public garage was practically the only use available. If, therefore, the intervening appellant be deprived of that use by the strict letter of the Building Zone Resolution, surely practical difficulties and unnecessary hardships will ensue within the meaning of section 20. But it may be urged that this is no answer because the intervening appellant may comply with subdivision (g) of section 7, obtain the necessary consents from the property owners as therein provided and thus have his application granted. Perhaps, in order to avail him- self of the provisions of section 20, he ought to attempt this, but one cannot examine the record in this case without being impressed with the fact that any such attempt would be utterly futile. Practically all of the property owners in the immediate neighborhood are opposed to the erection of this garage. It seems to me clear that he would be unable to obtain even ten per cent of any frontage

which might reasonably be required, to say nothing of eighty per cent. I do not think, therefore, he should be compelled to go through this idle and useless ceremony where it plainly appears, as it does here, that he could not succeed. It seems to me, therefore, that all the elements necessary to bring this case within the provisions of section 20 exist. The property is not available for residence or ordinary business purposes. It is available for a garage. Consents of property owners pursuant to subdivision (g) of section 7 cannot be obtained. Manifestly, then, practical difficulties and unnecessary hardships in the way of carrying out the strict letter of the provisions of the resolution exist, and the board of appeals would have power under section 20 to grant the permit.

It is true that the board has not based the granting of this application on any such ground, but invoked only the provisions of subdivision (e) of section 7. But, even though the basis of their decision be erroneous, it does not follow that their decision may not be sustained, if it be just and other grounds therefor exist. As was said in the two Special Term cases, above cited, the board not having made a proper decision, the matter may be considered by the court upon its merits and, in my opinion, we ought to hold that the granting of this permit to the intervening appellant was proper because within the provisions of section 20 of the Building Zone Resolution practical difficulties and unnecessary hardships existed.

It might perhaps be argued that where the Building Zone Resolution provides a specific method of variation, that method must be pursued to the exclusion of any other, and that section 20 was not intended to apply to such cases. But, in my opinion, that construction ignores the broad purpose expressed. That purpose is to grant relief to a landowner in any case where substantial justice requires it, although contrary to other provisions of the resolution.

If the views I have above expressed are sound, it is unnecessary to consider the question referred to in the opinion of the learned Special Term as to whether or not another large garage is needed in the locality in question. I think such a fact would be extremely difficult of proof, and the case, in my opinion, does not depend upon the determination of any such question.

I, therefore, advise that the order appealed from be reversed upon the law, the order of certiorari dismissed and the determination of the board of appeals sustained, without costs.

KELLY, P. J., RICH, MANNING and KAPPER, JJ., concur.

Order reversed upon the law, order of certiorari dismissed, and the determination of the board of appeals sustained, without costs.