In the Matter of the Application of TRALOW REALTY CORPORA-
TION, Petitioner, Respondent, for an Order Reviewing Adminis-
trative Decision 329–39-A, against HARRIS H. MURDOCK,
Chairman, and Others, Constituting the Board of Standards and
Appeals of the City of New York, Appellants.

First Department, January 17, 1941.

*James Hall Prothero* of counsel [*Paxton Blair* and *Rose Schneph*
with him on the brief; *William C. Chanler, Corporation Counsel,*
attorney], for the appellants.

*Laurence Arnold Tanzer* of counsel [*Harold Henigson* with him
on the brief; *Tanzer & Mullaney,* attorneys], for the respondent.

Dore, J. The board of standards and appeals by unanimous vote on June 2, 1939, after a full hearing and an inspection of the premises in question, revoked two building and two fire prevention permits issued in connection with the proposed construction of two gasoline service stations in a residence zone flanking the approach to the Bronx-Whitestone Bridge in Bronx county. In a certiorari proceeding to review the board's action, the court at Special Term annulled the revocation. The board appeals.

In August, 1937, in condemnation proceedings for the highway approach to the new Bronx-Whitestone Bridge, the city acquired a strip of land which ran through the center of the property in question, leaving irregularly shaped plots on each side. For such taking the owner received a suitable award. The sites here involved are the portions of the property east and west of the land taken. They are situated on the northeast and northwest corners respectively of Ferris and Seaman avenues in the borough of the Bronx, on each side of the highway leading to and from the Bronx-Whitestone Bridge, about one-fifth of a mile on the Bronx side of the toll booths at the bridge entrance. While two plots are involved, one on the west side of the highway, the other on the east side, the decision revoking the permits in connection with the eastern plot is by stipulation to be controlled by the decision regarding the western plot, and for convenience reference will be made to the plot in the singular number.

No certificate of occupancy has been issued nor has any gasoline service station been constructed. Forty-eight hours before a zoning resolution restricting the district to a residence district became effective, the owner sank five gasoline tanks on the site at a cost of $900, and claims vested rights to build gasoline service stations on each site in the presently restricted residence zone.

On August 30, 1937, the then owner of the property filed with the Bronx borough superintendent of buildings, department of housing and buildings, an application for the construction of a one-story office building. By amendment allowed October 27, 1937, the proposed use of the premises was declared " to be a gasoline service station instead of office." On March 11, 1938, an affidavit showing new ownership was filed by Milton D. Lowenstein for petitioner, Tralow Realty Corporation, although petitioner contends the beneficial ownership of the property has been in the same family for many years. By another amendment allowed July 20, 1938, four additional gas tanks were planned, bringing the total number to six. By additional amendments granted that same day, the main building was partitioned for a repair shop, and the tanks relocated to the center on Ferris avenue at the front. On October

14, 1937, the owner filed with the Bronx borough superintendent of buildings what is known as a fire prevention application for approval of plans for the installation of gasoline storage tanks on the premises. At the time such applications and amendments were made, the premises were in an unrestricted-use district.

Separate applications were filed for the combustible fuel tanks as distinguished from the office buildings. Thus application No. 440 of 1937 is characterized " N. B." (new building) application, whereas the record refers to application No. 705 of 1937 as " F. P." (fire prevention) application. Mere cross-references between such applications showing that they refer to the same premises cannot change their character as separate applications for doing separate kinds of work for which separate permits should be secured.

Certain approvals and objections were noted on both applications and finally the commissioner of buildings approved the new building application, as amended, on October 27, 1937, and the fire prevention application, as amended, on December 28, 1937. However, the new building permit in connection with the service station was not issued by the superintendent of buildings until July 20, 1938. No fire prevention permit was issued until August 16, 1938. Apparently the required plumbing and curb-cut permits for a gasoline service station were never issued.

Meanwhile, the city planning commission, acting under sections 200 to 202 of the New York City Charter, issued a public notice on May 25, 1938, formally proposing that the district be re-zoned into a residence district in connection with the expensive parkway improvements being made to the bridge approach. This notice was published in the City Record from May 28 to June 7, 1938, announcing public meetings which were held on June 8, 15 and 22, 1938. Petitioner's secretary attended the public hearings and had actual notice of the proposed new zoning.

On June 22, 1938, the city planning commission adopted a resolution restricting the district to a residence district, and filed the same with the board of estimate on June 24, 1938, together with a revised-use district map. As the board of estimate did not modify or disapprove the resolution within thirty days from the date of filing, the resolution, under the provisions of section 200 of the New York City Charter, became effective on July 24, 1938.

Four days before the effective date of the new residence zone resolution, petitioner on July 20, 1938, secured from the superintendent of buildings the permit, dated that day, to proceed with the construction and erection of the proposed one-story office building and gasoline service station under new building application No. 440 of 1937. No construction work in connection with the

service station office was actually done, but under the permit of July 20, 1938, petitioner employed a contractor who sank a 550-gallon combustible fluid tank on the western plot and four 550-gallon tanks on the eastern plot on July 22 and 23, 1938, a month after the city planning commission residence zone resolution had been adopted and within forty-eight hours before it became finally effective. Petitioner paid the contractor $900. When these five tanks were installed, no fire prevention permit had been issued as required by subdivision d of section 487 of the New York City Charter.

Contending that the superintendent of buildings had erred in issuing the permits and in refusing to revoke them on its application, the park department appealed to the board of standards and appeals. That board held that no work was properly done under the new building permit issued July 20, 1938, that no work was legally done under the permit issued August 16, 1938, and revoked the permits without prejudice to petitioner's application for a re-zoning variance. On the facts disclosed, we think the decision of the board of standards and appeals was correct and should have been confirmed, and that the court at Special Term erred in annulling the board's determination.

Whether the superintendent of buildings was without any power whatever to issue permits for the construction of the gasoline service stations at the sites in question after the adoption of the city planning commission's restricted residence zoning resolution and during the thirty days' pendency of such resolution before the board of estimate, need not be decided. Sufficient is it to decide on this record that the board's action was proper as petitioner, with full knowledge of the zoning resolution, had not procured the requisite permits for the work necessary to be done before the effective date of the resolution, and no certificate of occupancy has been issued. Indeed, no substantial part of the construction required has been completed.

The construction and equipment of a gasoline service station requiring combustible fluid tanks, gasoline lines and pumps, accessory office buildings, plumbing facilities and curb-cuts, could not lawfully be accomplished except under proper permits issued by the respective properly authorized city agencies. Special Term erred in holding that the installation of the gasoline tanks was fully authorized by the permit (N. B. 401–1937) issued July 20, 1938. Under the provisions of subdivision d of section 487 of the New York City Charter, the fire commissioner has " sole and exclusive jurisdiction over the approval of the installation of all containers for combustibles, * * * explosives, inflammables

or other dangerous substances, * * * except where the location * * * may affect the structural condition of the building, in which case the Commissioner shall not give his approval without the approval of the superintendent of buildings * * *." No fire prevention permit was procured until the contractor, nearly a month after the installation of the tanks, procured such purported permit on August 16, 1938. That permit, issued a month after the re-zoning resolution had been in legal effect, purporting to permit installation of combustible fuel tanks in a residence district, was illegal and void and was properly revoked. (Building Zone Resolution, art. II, Use Districts, §§ 2 and 3.) In the interest of public safety, gasoline tanks cannot be installed legally except under fire prevention permits expressly required by subdivision d of section 487 of the New York City Charter. No such permit had been issued when, within forty-eight hours of the effective date of the zoning resolution, the gasoline tanks in question were sunk on the premises. As the chairman of the board of standards and appeals pointed out, the petitioner proceeded with the work before it actually had the permit.

It also appears that when the permit of July 20, 1938, was issued, no certificate of workmen's compensation insurance had at that time been filed. (See Workmen's Compensation Law, § 57.) The policy of workmen's compensation insurance, though asked for several times during the hearing, does not appear to have been produced.

Curb-cuts, for use in connection with a gasoline service station, require approval of an application and a permit. No permit for such purpose had been secured. It appears that petitioner on March 24, 1938, filed two applications with the Bronx borough superintendent of buildings (1) for a parking lot for more than five cars — not a gasoline service station — and (2) for curb-cuts for use in connection with such parking lot. The approval of this parking lot application was revoked on January 16, 1939.

It is interesting also to note that this petitioner, two months after the effective date of the zoning resolution, filed further plans and applications on September 26, 1938, for further " improvements " on this site, consisting of thirty-three bungalows. Apparently, this application was also approved by the department of housing and buildings on October 20, 1938, and permit to build issued November 9, 1938. But the Bronx borough superintendent of buildings reported that these permits were revoked on January 16, 1939, as having been illegally issued.

We deem it unnecessary to pass upon the propriety of the reply to the return except to state that in so far as the reply attempts

to state a case for a variance under section 21 of the Building Zone Resolution, it is improper. The revocation by the board of standards and appeals was without prejudice to an application for a variance. But such application under section 21 must be presented to and passed upon in the first instance by that board.

The issue presented is whether petitioner acquired vested rights by hastily installing five gasoline tanks on the eve of the effective date of the residence zoning resolution without the proper and requisite permits for such installation. No gasoline service station has been constructed, no certificate of occupancy, no curb-cut permits for a gasoline station, or valid fire prevention permits have been issued. Petitioner had full knowledge of the public improvement and the purposes of the zoning resolution placed upon this district to safeguard the elaborate new highway, parkway and bridge improvements costing many millions. We think the law and equities are with the public and not with the petitioner, who may not erect these two gasoline service stations on this site without first securing a variance from the board of standards and appeals on required notice to all other property owners affected.

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the determination of the board of standards and appeals reinstated.

MARTIN, P. J., TOWNLEY and COHN, JJ., concur; GLENNON, J., dissents and votes to affirm.

Order reversed, with twenty dollars costs and disbursements, and the determination of the board of standards and appeals reinstated.