In the Matter of the Application of GERMAINE M. THOMAS and Others, Appellants, for a Certiorari Order against THE BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK, HARRIS H. MURDOCK and Others, as Members of Said Board of Standards and Appeals, and BAY PARKWAY HOLDING CORPORATION, Respondents.

Second Department, February 24, 1942.

*Reginald S. Hardy*, for the appellants.

*James Hall Prothero* [*William C. Chanler, Corporation Counsel, Paxton Blair* and *Raymond J. Horowitz* with him on the brief], for the respondent The Board of Standards and Appeals.

*Paul Friedman*, for the respondent Bay Parkway Holding Corporation.

JOHNSTON, J.   This is a proceeding to review the determination of the board of standards and appeals, which granted a variance of the Amended Building Zone Resolution of the City of New York so as to permit the erection of a gasoline station in a business district.   The application was made pursuant to section 21 of the said resolution, which sanctions such a variance on the ground of unnecessary hardship.   The following are the material facts: Respondent Bay Parkway Holding Corporation is the owner of a rectangular plot of land on the southeast corner of Utica avenue

and Clarendon road, in the borough of Brooklyn. Both streets are busy thoroughfares. The plot extends eighty feet on Utica avenue and one hundred feet on Clarendon road. It is improved with a one-story building eighty feet by thirty-one and one-half feet, which is designed for use as an office, five-car garage and automobile laundry. At the time of the hearing the premises were not used for any purpose. The building is located so as to leave unoccupied about two-thirds of the plot facing Utica avenue. It is for the erection of a gas station on this portion that the variance was sought and granted.

The area surrounding the premises is, in the main, undeveloped. There are, however, some small residences on the side streets and several commercial establishments, principally on the corners of Utica avenue and the intersecting streets. There is also a gasoline filling station at Avenue D and Utica avenue, one block south of Clarendon road.

In 1936 the board of standards and appeals granted a prior application by the owner for a variance under section 21 of the Amended Building Zone Resolution. That variance, which in effect was both unconditional and permanent, was annulled by order of the court. (*Matter of Finn* v. *Bd. of Standards, etc., of City of N. Y.*, 163 Misc. 296.)

In 1940 the owner again applied for a variance. The board found that the owner suffered an unnecessary, special and unique hardship and on April 30, 1940, granted the application for a term of five years subject to certain conditions as to the type of construction. Petitioners, owners of property in the immediate vicinity, instituted this proceeding to review the board's decision. The Special Term dismissed the proceeding and confirmed the board's determination, and petitioners appeal.

In my opinion the record does not show any material change in the conditions affecting the *locus in quo* since the making of the order in the prior proceeding. The principal ground for the present variance is that the premises as now improved can be more profitably used as a gasoline station. The proof fails, however, to show that the hardship suffered by the owner is a unique, undue or special hardship to which others in the same zone are not similarly subject. In the absence of such a showing, the board was not justified in granting the variance under section 21. (*Matter of Otto* v. *Steinhilber*, 282 N. Y. 71; *Matter of Tenlan Realty Corp.* v. *Bd. of Standards, etc.*, 251 App. Div. 311; affd., 276 N. Y. 594; *Matter of Halpert* v. *Murdock*, 249 App. Div. 777; affd., 274 N. Y. 523.)

Moreover, assuming that the record shows a unique hardship, it is a hardship of the owner's own creation. The present improvement, which alone tends to make the land unproductive and unprofitable, was erected by the owner or its predecessor in title with a view to laying the basis for a subsequent plea of unnecessary hardship so as to obtain the variance. The present owner, if it was not a party to this plan, purchased the premises with full knowledge thereof. It is suffering from a necessary hardship for which it alone is responsible. In no event may such a self-created hardship be made the basis for a variance under section 21. (*Matter of Steers, Inc.*, v. *Rembaugh*, 259 App. Div. 908; affd., 284 N. Y. 621.) Nevertheless, the order of the Special Term should be affirmed.

It appears that after the decision of the board, but prior to the commencement of this proceeding, the planning commission of the city of New York adopted a new Zoning Resolution, which became effective on June 28, 1940. This resolution added a new subdivision (f) to section 7 thereof. This section and subdivision, so far as material, read as follows: " § 7. Use District Exceptions. The Board of Standards and Appeals may, in appropriate cases, after public notice and hearing, and subject to appropriate conditions and safeguards, determine and vary the application of the use district regulations herein established in harmony with their general purpose and intent as follows: * * * (f) Permit, for a stated term of years, in a business, business-1, retail or retail-1 district, where the provisions of § 21-A do not apply, the erection of a gasoline service station or oil selling station, and the erection of a garage for more than five motor vehicles or the storage or parking of more than five motor vehicles; * * *."

Section 21-A of the Zoning Resolution prohibits the erection of a gas station on any portion of a street on which there is an exit or entrance to a public school, park, playground, library, museum or hospital, or within 200 feet thereof.

Section 21 of the Zoning Resolution authorizes the board, in a specific case, where there are practical difficulties or unnecessary hardships in the way of literal compliance with the provisions of the resolution, to vary its provisions " in harmony with its general purpose and intent, so that the public health, safety and general welfare may be secured and substantial justice done." That section, like subdivision (f) of section 7, is necessarily limited by the additional restrictions imposed by section 21-A.

Under section 21 the variance may be granted in any district, but only upon a showing of practical difficulty or unnecessary hardship, and the variance may be permanent, unconditional

and without limitation as to the nature of the proposed use. Under subdivision (f) of section 7 the variance may be granted in any appropriate case but only in a business or retail district and the variance *must* be temporary, conditional and limited as to the nature of the proposed use. Under both sections the variance granted must be in harmony with the general purpose and intent of the Zoning Resolution; and it may not be granted if it is contrary to the provisions of section 21-A.

It will be observed, however, that the primary distinction between these two sections is that under section 21 proof of difficulty or hardship, not shared by others generally, is a condition precedent to a permanent and unconditional variance, which, in the discretion of the board, may be granted for any purpose; whereas under subdivision (f) of section 7 proof of *any* difficulty or hardship suffered by the owner may, in the discretion of the board, be an " appropriate " case sufficient to warrant the granting of a temporary and conditional variance, but only for a gas station or garage or parking place for more than five vehicles. In other words, under subdivision (f) of section 7 " the field of inquiry is restricted " and the " question of hardship to the individual owner becomes a more material element in the determination of the application." (Cf. *Matter of Reed* v. *Bd. of Standards & Appeals*, 255 N. Y. 126, 134, 135.)

As stated, the present application was made under section 21, and the board, in the exercise of discretion, granted the variance under that section. Hence, the board necessarily must have found (1) that the applicant had established hardship; and (2) that such hardship was special and unique. In fact, the board so certified in its return and also certified that its action was in harmony with the general purpose and intent of the Zoning Resolution. The Special Term, in effect, so held. As already indicated, I agree with the board and the Special Term as to the first, but I disagree as to the second finding. As the first finding, together with all the other relevant findings of the board, is supported by the evidence, the applicant established a complete case for the granting of the temporary and conditional variance under subdivision (f) of section 7. (Cf. *Matter of Reed* v. *Bd. of Standards & Appeals, supra.*) Under the circumstances, may the order be affirmed?

Appellants argue that if subdivision (f) of section 7 be deemed applicable, they will be deprived of the opportunity of submitting evidence to the board tending to establish that the granting of the application would not be in accord with sound zoning practice and not in conformity with the general purpose and intent of the zoning

laws. The fallacy of that argument is obvious, for a variance may not be granted under either section 21 or subdivision (f) of section 7 unless the board finds as a fact that the variance conforms to the general purpose and intent of the Zoning Resolution.

Appellants also contend that as the application was under section 21, it was necessary for them to show only that the owner did not suffer unnecessary hardship, whereas if the application be considered as one under subdivision (f) of section 7, other evidence is available and will be adduced. Appellants overlook that their proof was directed toward the refutation of every claim which might be urged by the owner under subdivision (f) of section 7. Unnecessary hardship is a comprehensive term.

The failure of appellants to indicate the nature of the claimed available evidence is significant. The owner and appellants offered all the evidence available,— the one to prove hardship, the other to disprove it. That was the issue to be determined, whether the application be regarded as one under section 21 or under subdivision (f) of section 7. Additional evidence would be merely cumulative and would not change the result, particularly since the board concluded not only that the proof established hardship, but that it established a hardship which was special and unique. I fear appellants are endeavoring merely to delay the granting of a variance.

There are three cases, two of which passed through this court, where the application for a variance was made or granted under one section and sustained by invoking another section. (*People ex rel. Smith* v. *Walsh,* 211 App. Div. 205, 216, 217; affd., 240 N. Y. 606; *People ex rel. Facey* v. *Leo,* 110 Misc. 516; affd., 193 App. Div. 910; affd., 230 N. Y. 602; *People ex rel. McAvoy* v. *Leo,* 109 Misc. 255.) Section 7 of the Zoning Resolution was involved in each of these cases. It was held, in effect, that if the proof be deemed inadequate to comply with the particular subdivision of section 7 relied upon, it was sufficient under section 20 (now § 21) to show unnecessary hardship. The converse is equally true.

Paraphrasing the language of the Court of Appeals in *People ex rel. Smith* v. *Walsh* (*supra*), it may be said that while proper practice might require that the matter be returned to the board to decide the application on the correct theory, nevertheless, as it seems clear upon the evidence presented and the findings made that the board would exercise its power to grant the variance under subdivision (f) of section 7, no substantial right of any party will be affected by an affirmance of the order appealed from.

The rule is now well established that in determining the correctness of a decision the appellate court must apply the law as it exists at the time it makes its determination. (*Boardwalk & Seashore Corp.* v. *Murdock*, 286 N. Y. 494, 498; *Bazinsky* v. *Kesbec, Inc.*, Id. 655; *Vandenbark* v. *Owens-Illinois Co.*, 311 U. S. 538, 542, 543. Cf. *Malnati* v. *Metropolitan Life Ins. Co.*, 254 App. Div. 681, and cases there cited.) This rule is simply a practical, common sense means of doing substantial justice and of avoiding the necessity of protracted retrials which inevitably will result in the same decision. The ultimate decision to which a party is entitled should not be delayed by vain formalities. No useful purpose would be served by having the board hear the application for a variance *de novo*.

Appellants, in contending that subdivision (f) of section 7 may not now be considered, cite *Matter of Tralow Realty Corp.* v. *Murdock* (261 App. Div. 173), which has no application. That was a certiorari proceeding brought to review the determination of the board in revoking certain building permits which had been improperly granted. The question of a variance was not involved. It was not raised before the board under any section of the Zoning Resolution. It was a new issue which the owner first injected into the case at Special Term. The court properly refused to consider whether or not the owner was entitled to a variance which would permit him to retain the gasoline station. Here the application before the board was specifically for a variance; that was its sole purpose.

Appellants also contend that subdivision (f) of section 7 is unconstitutional in that it is an unlawful delegation of legislative power to the board of standards and appeals, contrary to section 1 of article III of the Constitution of the State of New York. Preliminary to a consideration of this question, it is necessary to decide whether or not appellants have waived their right to urge it by reason of their failure to raise it in the court below. Appellants insist that the first opportunity they had to raise it was in their reply brief on this appeal. I think not.

In its return the owner set forth that subsequent to the decision of the board, subdivision (f) of section 7 had been adopted. It also set forth the new subdivision and the effect thereof. It appears, without dispute, that in its brief filed at Special Term the owner invoked the provisions of the new subdivision to sustain the determination of the board, and appellants merely urged it had no application. Appellants had ample opportunity to raise the question of constitutionality, and having failed to do so they may not now be heard to urge it. However, in my opinion subdivision (f) of section 7 is constitutional.

While it is true that no body in which the Constitution vests legislative power may abdicate its legislative function by delegating power to another body to make the law, it is equally well established that the legislative body may delegate to a subordinate body the discretionary power to execute and administer its laws, provided the legislative body has formulated a standard or policy reasonably clear to govern the exercise of discretion by such subordinate body. (*United States* v. *Rock Royal Co-op.*, 307 U. S. 533, 574–577; *Currin* v. *Wallace*, 306 id. 1, 16–18; *Schechter Corp.* v. *United States*, 295 id. 495, 537–542, 551–553; *Panama Refining Co.* v. *Ryan*, 293 id. 388, 429–437; *Hampton & Co.* v. *United States*, 276 id. 394, 407–411; *Field* v. *Clark*, 143 id. 649, 691–694; *Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.*, 191 N. Y. 123, 138, 139; *People ex rel. Doscher* v. *Sisson*, 222 id. 387, 396, 397; *Matter of Small* v. *Moss*, 279 id. 288, 291, 295–299; *Green Point Sav. Bank* v. *Zoning Appeals Board*, 281 id. 534.)

While these general rules are well settled, their applicability probably never will be. As the cases cited disclose, the ever-recurring problem is whether any statute constitutes an unlawful delegation of legislative power or merely a discretionary power to administer and execute the declared policy of the Legislature within reasonably clear standards fixed by the statute. No case may be dogmatically followed. It may be said, however, that since the decision of the United States Supreme Court in the *Schechter* case (*supra*), holding invalid the National Industrial Recovery Act on the ground that it failed to set forth any general standard or policy to govern its operation, the Federal courts have been more liberal in construing Federal statutes to find a sufficient declaration of policy to guide the administrative board. The instant case does not involve a Federal question. Therefore, decisions of the Federal courts are not controlling, although entitled to great weight. (*People ex rel. Central Park, etc., R. R. Co.* v. *Willcox*, 194 N. Y. 383, 386.)

As the decision on the question of constitutionality depends primarily on the construction to be given to the statute here involved, to wit, the Zoning Resolution, it will be necessary to examine that resolution in detail to determine whether it sets forth any reasonable standard or guide. The statute on which the authority of both the board of estimate and the board of standards and appeals rests was enacted by chapter 601 of the Laws of 1917. This added to section 242-b of the Greater New York Charter the provision that the Zoning Regulations of the board of estimate " may provide that the board of appeals [now known as board of standards and appeals] may determine and vary their application in

harmony with their general purpose and intent and in accordance with general or specific rules therein contained." This chapter also added to section 718-d of the Charter a provision empowering the board of appeals to " hear and decide all matters referred to them or upon which they are required to pass under any resolution of the Board of Estimate and Apportionment adopted pursuant to sections two hundred and forty-two-a and two hundred and forty-two-b of this chapter." Section 242-a of the Charter confers upon the board of estimate the power to regulate the height and bulk of buildings and the area of yards and other open spaces. Section 242-b of the Charter confers upon the board of estimate the power to regulate the location of trades and industries and to divide the city into zoning districts. Both these sections were added to the Charter by chapter 470 of the Laws of 1914. Section 242-b specifically provides that the regulations to be adopted by the board of estimate pursuant thereto " shall be designed to promote the public health, safety and general welfare " and that in adopting such regulations the board of estimate " shall give reasonable consideration, among other things to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development in accord with a well-considered plan." The present Charter recognizes all the existing resolutions and regulations of the board of estimate but imposes upon the newly created city planning commission the duty to initiate all future changes in the zoning regulations. (New York City Charter, §§ 200, 201.) The Administrative Code of the City of New York vests in the city planning commission the power to regulate and restrict the location of trades and industries and to divide the city into zoning districts (§ 200–2.0). Like the old Charter, it specifically provides: " Such regulations shall be designed to promote the public health, safety and general welfare " and that the commission " shall give reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development in accord with a well-considered plan." But even under the new Charter provisions, all changes in the existing zoning regulations initiated by the planning commission are subject to the approval of the board of estimate before they can become effective. (Charter, § 200; *McCabe* v. *City of New York*, 281 N. Y. 349.)

It will be noted that the statute itself (old Charter, § 242-b; new Charter, § 200) requires that any variation made by the board of standards and appeals in the zoning regulations of the board of estimate shall be " in harmony with their general purpose and

intent and in accordance with general or specific rules therein contained." Thus, apart from the general rule of law that the delegation of discretion to a subordinate body to administer a law shall be circumscribed by sufficient standards to guide the board's discretion, the statute which authorizes the delegation of power to the subordinate board (the board of standards and appeals), expressly enjoins upon the legislative body (the board of estimate) the imposition of the condition that any delegation of power to vary the zoning regulations must be exercised in harmony with their general purpose and intent and in accordance with general or specific rules contained therein.

In sections 7 and 21 of the Zoning Resolution will be found all the provisions which allow the board of standards and appeals to grant a variance. As stated, subdivision (f) of section 7 was added as of June 28, 1940. But section 7 also contains ten other subdivisions, most of which were in force prior to June 28, 1940. Appellants, in effect, admit the validity of most of these other subdivisions of section 7 and of section 21, but attempt to differentiate them from subdivision (f) on the ground that they contain a definite standard to govern the exercise of the board's power, while subdivision (f) does not. An examination of all the provisions of sections 7 and 21 indicates that under some of them the board of standards and appeals has as wide a latitude as under subdivision (f). Moreover, section 21 of the Zoning Resolution, which permits a variance on the ground of unnecessary hardship, grants even wider latitude for, until limited by subsequent judicial decisions, " unnecessary hardship " offered an indefinite and virtually unrestricted field for the granting of a variance.

With respect to both sections 7 and 21 (before the addition of subd. [f] to § 7), it has been expressly held that they do not unlawfully delegate legislative power to a subordinate body. (*People ex rel. Sheldon* v. *Board of Appeals*, 234 N. Y. 484; *People ex rel. Beinert* v. *Miller*, 188 App. Div. 113; *Hilton* v. *Board of Appeals of City of Geneva*, 18 N. Y. Supp. [2d] 213 [not officially published].) With respect to a similar zoning ordinance of another municipality, the Appellate Division, Fourth Department, has reached the same conclusion. (*Matter of Olp* v. *Town of Brighton*, 173 Misc. 1079; affd., 262 App. Div. 944.)

It will be noted that under every subdivision of section 7 the variance granted must be subject to appropriate conditions and safeguards and in harmony with the general purpose and intent of the Zoning Regulations. This, in effect, establishes a legislative policy and sets up a standard or a gauge for every variance which the board of standards and appeals in its discretion may

grant. It incorporates into section 7 the standards prescribed by the original Charter provisions (§ 242-b, added by Laws of 1914, chap. 470, and amd. by Laws of 1917, chap. 601) and repeated in the Administrative Code of the City of New York (§ 200-2.0), namely, that every specific variance of the Zoning Regulations " shall be designed to promote the public health, safety and general welfare " and that the board of standards and appeals, in granting any variance, " shall give reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development in accord with a well-considered plan." These are the general rules which govern the granting of a variance. Each subdivision contains the specific rules which govern the granting of a variance. Hence, the provisions of subdivision (f) of section 7 satisfy the Charter requirements (§ 242-b) and likewise satisfy the constitutional requirements. Under the Federal and New York cases cited above, a declaration of such policy and of such standards, which must necessarily be read into both section 7 (and every subdivision thereof) and into section 21, is sufficient to sustain the validity of these sections.

In other jurisdictions zoning regulations substantially similar to the provisions contained in subdivision (f) of section 7 have been held to be valid. (*McCord* v. *Ed Bond & Condon Co.*, 175 Ga. 667, 669–672; 165 S. E. 590; *Spencer-Sturla Co.* v. *Memphis*, 155 Tenn. 70, 88, 89; 290 S. W. 608.)

*Matter of Small* v. *Moss* (279 N. Y. 288), upon which appellants rely, is not contrary to the cases cited. There the commissioner of licenses of the city of New York revoked the license to conduct a theatre because he concluded that its operation would constitute a traffic hazard. The court held that the commissioner had no right to revoke the license because nowhere in the statute conferring power upon him to grant licenses was a traffic hazard mentioned directly or indirectly as a reason for the revocation of a license. In other words, the court held that in the absence of such a declaration of policy by the Legislature, " the Commissioner has no power to declare any legislative policy or to create the standards which must govern the grant of a license," and that he " may only apply the policy declared and the rules and standards laid down in statute and ordinance " (p. 297).

The latitude granted to the board of standards and appeals in section 7 to grant variances arises from the necessities of the situation. Under section 21 the courts have restricted the granting of variances to cases where special or unique hardship is disclosed. As the litigation in this court amply illustrates, it is

exceedingly difficult to make a showing of such hardship even though the proof of general, ordinary hardship may be abundant. In a recent case, where the proof showed that the owner could not make a profitable use of his property unless he were permitted to operate a gas station, we denied the variance under section 21 because there was nothing unique about his hardship as contrasted with the general hardship suffered by other property owners in the same zone. The Court of Appeals affirmed. (*People ex rel. Arverne Bay Const. Co.* v. *Murdock*, 247 App. Div. 889; affd., 271 N. Y. 631.) Subsequently, the Court of Appeals held the Zoning Resolution unconstitutional as to that petitioner's property on the ground that without the variance the zoning resolution prevented any profitable use of its property. (*Arverne Bay Construction Co.* v. *Thatcher*, 278 N. Y. 222.) Following that decision subdivision (f) of section 7 was added by the planning commission so as to permit a variance for a gas station even in the absence of proof of unique hardship.

It has been said that the variances permitted by the Zoning Resolution are in the nature of safety valves to prevent the oppressive operation of the Zoning Regulations in particular instances. (*Matter of Otto* v. *Steinhilber, supra*, p. 75.) The history of all the litigation involving zoning regulations shows that to insure the validity of a zoning plan for an entire municipality, the legislative body must vest in some subordinate body the power to grant variances in appropriate cases. (Cf. *Arverne Bay Construction Co.* v. *Thatcher, supra; People ex rel. St. Albans-S. Corp.* v. *Connell*, 257 N. Y. 73; *Matter of Eaton* v. *Sweeny*, Id. 176; *Dowsey* v. *Village of Kensington*, Id. 221.) Of necessity it is impracticable, if not impossible, to define in advance with precision the circumstances which present an appropriate case to authorize a variance. The test to be applied, therefore, in granting a variance is substantially the same as in framing the zoning regulations, namely, does the variance or the regulation " promote the public health, safety and general welfare," after giving " reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development in accord with a well-considered plan." Such tests are prescribed in the Charter and in the Administrative Code of the City of New York.

The order appealed from should be affirmed, but without costs.

LAZANSKY, P. J., ADEL and CLOSE, JJ., concur; TAYLOR, J., dissents and votes to reverse the order on the law and the facts, to annul the determination of the board of standards and appeals, and to deny the application for a variance, with opinion.

TAYLOR, J. (dissenting). I dissent and vote to reverse on the law and the facts the final order appealed from, to annul the determination of the board of standards and appeals, and to deny the application for a variance. I agree with the majority that respondent Bay Parkway Holding Corporation was not entitled to the relief awarded to it by the board, which acted only in pursuance of section 21 of article V of the Amended Building Zone Resolution under which said respondent's predecessor in title instituted before it this proceeding. Subsequently to the board's determination under review, a new subdivision (f) of section 7 was enacted. The board has determined *no proceeding instituted thereunder*. The majority ruling accomplishes the affirmance of the final order made at Special Term confirming that determination of the board, upon a theory foreign to applicant's pleading before that body. " Pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them." (EARL, J., in *Southwick* v. *First Nat. Bank of Memphis*, 84 N. Y. 420, at p. 429.) The appellants have had no day in court upon an application made upon allegations showing a claimed right to relief under subdivision (f) of section 7. Relief must be awarded *secundum allegata et probata*. (*Walrath* v. *Hanover Fire Ins. Co.*, 216 N. Y. 220, 225.) Numerous later authorities follow the *Walrath* case. One may not sue upon a given theory and have a favorable determination, not warranted in pursuance thereof, sustained on another theory, foreign to the allegations of his pleadings. (Cases *supra*.) This court should pass upon the record as it finds it. It presents only a proceeding under section 21. The function of the Special Term and of this court is purely one of review upon the present record. (*People ex rel. Hudson-Harlem Co.* v. *Walker*, 282 N. Y. 400, 404. Cf. *Matter of Tralow Realty Corp.* v. *Murdock*, 261 App. Div. 173, 177, 178.) If respondent Bay Parkway Holding Corporation desires relief upon facts claimed to justify it under subdivision (f) of section 7, it should plead them in an appropriate application to the board.

In their brief, the appellants question the constitutionality of subdivision (f) of section 7. That question, which I regard as debatable, should not be decided herein. In a new proceeding, if instituted, the appellants may make timely protest on that ground in order to avoid possible waiver on their part; and they may offer the additional proofs which, in their brief they state they will then present. They have made objection on the constitutional ground here, although not at Special Term when respondent Bay Parkway Holding Corporation, seeking confirmation of the board's determination, injected subdivision (f) of section 7 into the

proceeding, in which, in my opinion, it had no proper place. There has been no waiver.

*Boardwalk & Seashore Corp.* v. *Murdock* (286 N. Y. 494) and *People ex rel. Smith* v. *Walsh* (211 App. Div. 205; affd., 240 N. Y. 606) and kindred cases, when each is considered in the light of its peculiar facts, are not in conflict with my views above expressed. None, in my opinion, presents the exact situation legally which the subsequent enactment of subdivision (f) of section 7 brings into this case, or justifies a conclusion for affirmance on this record.

Order affirmed, without costs.