Larkin, J.
The petitioner, Holy Sepulchre Cemetery, is a nonprofit corporation created by chapter 332 of the Laws of 1872, as last amended by chapter 502 of the Laws of' 1944. Under the original statute, the corporation was authorized to acquire land in Monroe County, within five miles of the city of Rochester, not exceeding 200 acres, as it might select, for sole use as a cemetery. The amendment of 1944 increased the acreage to 650. Petitioner, more than seventy years ago, purchased realty, now within the city of Rochester, which is still used by it as a cemetery for the burial of Roman Catholic dead and members of their families. There have been approximately 110,000 interments therein.
Following the 1944 amendment of its charter, the petitioner acquired title to two farms of 176 acres in the town of Greece. This tract is bounded on the north by Latta Road with a frontage of about 3,000 feet; on the east by Mt. Read Boulevard about 2,000 feet; on the south and west by farm lands. At the southeast corner of Mt. Read Boulevard and Latta Road is Our Mother of Sorrows, a Roman Catholic church. Adjoining the church property on the south is a small cemetery of a few-acres, belonging to the church. The land adjoining the church property and cemetery on the east and south is farm land, extending north to Latta Road and east to Dewey Avenue.
Latta Road, Dewey Avenue, and Mt. Read Boulevard are public streets of the town of Greece. Dewey Avenue runs generally north and south intersecting Latta Road, which extends east and west. Mt. Read Boulevard runs south from Latta Road. A short distance west of petitioner’s property and on Latta Road, a subdivision has been mapped, laid out, and several houses built therein. The owners of three of these houses were objectors herein. On the north side of Latta Road, west of Dewey Avenue and generally across from the church property of Our Mother of Sorrows, there are three bungalows and several residences. Apparently the residences were built within a comparatively recent period. About a mile south of petitioner’s land, is another highway of the town of Greece-English Road. The briefs and record indicate that residential subdivisions had been opened and built upon, to a considerable extent, prior to the outbreak of the war, as far north on Dewey Avenue as Latta Road and west of Dewey Avenue on English *37 Road. The town has installed a section of a contemplated sanitary and storm water sewage system. The north and west limits of it are English Road and Dewey Avenue. The petitioner’s land is so situated that it can drain readily into the town’s disposal plant erected at a point northeast of the intersection of Latta Road with Dewey Avenue.
The town of Greece, on the east, adjoins the city of Rochester. It has grown from a population of 3,350 in 1920, to 14,925 in 1940. Since 1940 there has been a further increase. There are five Roman Catholic churches in the town, but no one of them has cemetery facilities except Our Mother of Sorrows, but its cemetery is small and has been in use for more than 100 years. While petitioner’s present cemetery in the city of Rochester is not entirely occupied, evidently the petitioner acquired this land in the town of Greece not only for the purpose of supplying the cemetery needs of the Roman Catholic population of that town, but also looking to the future when its present cemetery will no' longer be available for burials. Holy Sepulchre Cemetery is the largest cemetery in the county of Monroe, in which Roman Catholic dead and the members of their families are buried.
In 1929, the town of Greece, acting under what was then article 17-A of the Town Law, adopted a zoning ordinance which is not included in the record. Nevertheless, enough is shown to indicate that this ordinance zoned all of the real property of the town into three districts: (1) business, (2) industrial, and (3) all of the remaining property within the town limits as residential. The area of the town is not shown. This ordinance, as originally enacted, contained no express provision referring to cemeteries. In 1936, section 17 of article V of the Ordinance relating to restrictions upon the business use- district was amended, so that now that section provides that no building, structure or premises shall be erected, constructed or utilized within the business use district for'any of the following purposes: “ Cemeteries, except with the special permit of the Board of Appeals.” Other than this reference to cemeteries, the ordinance is silent upon that subject. Concededly, the petitioner’s lands are located in a zone limited to residential use only.
In section 267 of the Town Law authorizing the ordinance, provision is made for a Board of Appeals empowered to modify any zoning ordinance relating to construction or utilization of buildings and structures, or the use of lands so that the spirit of the ordinance may be preserved, public welfare secured and substantial justice done, provided that there are difficulties or *38 unnecessary hardships in the way of carrying out the strict letter of the ordinance. In general, the Greece Board of Appeals has the usual power, committed to such a board under statutes granting power to municipalities to enact zoning ordinances, to permit a variance of the regulations in the event that to enforce it strictly, as to an individual, would produce unnecessary hardship, provided that such variance will not seriously interfere with the general zoning plan or the rights of other owners.
In July, 1944, the petitioner submitted to the board a petition asking that its real property located on Latta Boad be exempted from the residential zoning restriction and consenting to the use by the petitioner of that property for cemetery purposes. A public hearing was held, which was attended by the petitioner’s treasurer and its attorney. The board was frankly told by the petitioner’s counsel that the application was made despite the fact that the petitioner believed the town had no power to prevent the use of the property for cemetery purposes, but that in a true public spirit it desired to present the situation to the board in an endeavor to persuade that body and any objectors that the petition should be granted. A number who owned property in the town in the vicinity of the petitioner’s land appeared and opposed a variance. Following the hearing, petitions were filed with the board both for and against the granting of the petition. In addition, the board itself evidently consulted the Director of Begional Planning of Monroe County and a licensed engineer. The Begional Director submitted a letter, the substance of which was that he had made a personal inspection of several sites for a cemetery in the town of Greece. He named three locations, other than petitioner’s property on Latta Boad, which, in his judgment, would be satisfactory for use as a cemetery. The engineer was seemingly asked to determine whether- the petitioner’s land could be drained by the present disposal plant of the town. His letter expressed the opinion that it can be.
Thereafter, the board made its decision denying the request. Petitioner then applied, under article 78 of the Civil Practice Act for an order in the nature of certiorari to review this action. The Special Term annulled the determination of the Board of Appeals and remitted the application to it with a direction to issue to the petitioner a permanent permit to use this property for cemetery purposes. The board by this appeal seeks to review the Special Term order.
*39 Upon this appeal the petitioner urges: (1) That the ordinance does not apply to this land acquired by it for cemetery purposes. The basis of. that argument is (a) that the State, in effect, has declared its policy that cemeteries shall be permitted and although it has provided in some instances for their regulation by certain municipalities or other political units, it has not granted to towns of the State generally that power by giving to them a mere authority to enact zoning ordinances. On this particular feature, petitioner insists that the general grant of power to enact zoning ordinances as found in the Town Law, cannot be deemed to be an express grant to the towns of the State to enact ordinances overriding the settled policy of the State in reference to cemeteries; and (b) that this particular ordinance does not purport to prohibit cemeteries elsewhere in the town of Greece, except in the business use district. This argument is based on the fact that the ordinance itself makes no reference to the use of land for cemeteries except that it forbids them in a business use district unless the Board of Appeals consents. (2) That in any event the situations, disclosed on its application to the Town Board of Appeals for a variance showed, as to petitioner, an unnecessary hardship, and that the action of the board in refusing to grant the request was arbitrary and unreasonable.
Insofar as the first objection is concerned, the conclusion seems inescapable that neither the application of the ordinance to the petitioner’s land nor the validity of the ordinance itself was involved in this proceeding. The petitioner, by seeking a variance, asked the Board of Appeals to exercise, favorably, the discretion vested in it by the statute. Necessarily, the present application was more a request for a favor than a demand for an absolute right. Therefore it would seem to ¡‘ollow that by making the application, petitioner must be deemed, for the purpose of ,the application, to have conceded the validity of the ordinance. The board had no authority to act unless the ordinance did apply. If the petitioner was not asking the board to exercise its statutory discretion under a valid ordinance then, in effect, it was merely asking the board to express its view on either the applicability of the ordinance to its property or the validity of the ordinance itself. This latter thought of the application is at war with the idea of asking the board under the authority of section 267 of the Town Law to vary the ordinance in petitioner’s favor. (Arverne Bay Construction Co. v. Thatcher, 278 N. Y. 222, 226-227.) Taking the foregoing view, it necessarily follows that insofar as the petitioner on this appeal seeks to sustain the determina *40 tion of the Special Term on the basis of the invalidity of the ordinance or its inapplicability to its lands, those questions cannot be considered.
Passing then to what seems to be the only question reviewable, namely, whether the board properly exercised its discretion in denying the request, it was incumbent upon this petitioner in order to prove unnecessary hardship to show: (1) That, the land in question cannot yield a reasonable return if used only for the purpose allowed in the zone; (2) that the plight of the petitioner was due to unique circumstances and not to general conditions in the neighborhood which might reflect the impropriety of the particular zoning; (3) that the use to be authorized by the variance would not alter the essential character of the locality. (Matter of Otto v. Steinhilber, 282 N. Y. 71, 76, citing Bassett on Zoning [1936].) Analyzed, the position of petitioner as showing unnecessary hardship is as follows: It is a cemetery association and it is not authorized to engage in any business other than to conduct a cemetery. Consequently, if prohibited from using this land as a place of burial, it cannot make any profitable use of it. It cannot engage' in the real estate business and, after subdividing the property, sell lots. It cannot engage in the business of farming and for that matter, in any activity which will involve the use of the land for any purpose other than as a cemetery. Lastly, it is urged that granting the variance will not interfere with the development of the area , nor change its character.
If petitioner’s view of the situation be accepted, it may be that there was enough to satisfy the three requirements essential to show unnecessary hardship.- It is evident that as an owner of the property, petitioner cannot utilize it for any use other than as a cemetery. Moreover, its very status might be said to differentiate its situation from that of owners of similar property in the same area. Insofar as the third prerequisite is concerned, that to vary the ordinance so as to authorize use of the land as a cemetery will not essentially change the character of this locality, the fact that, although it was zoned in 1929, still no extensive building.has reached within a mile of the property in question and all the neighboring property was farm land when zoned and is now farm land, might justify the conclusion that the cemetery would not alter the substantial character of the locality.
Nevertheless, it is not so clear that petitioner’s situation discloses unnecessary hardship such as is contemplated by *41 section 267 of the Town Law, or, for that matter, such a hardship as would warrant, under any like statute, the granting of a variance. Had the petitioner been the owner of this property at the time the ordinance was adopted, though it had not yet used the land for cemetery purposes, to have enforced the ordinance against it, even assuming that it could be done, would surely have resulted in hardship to this owner. However, that is not quite this situation. This land had been zoned for many years before it was acquired by Holy Sepulchre Cemetery. It must have known of the existence of this ordinance. Apparently, it acquired title with full knowledge of it. One cannot escape the conclusion that it bought with its eyes open. In a sense then, the hardship was self-created (Matter of Thomas v. Board of Standards & Appeals, 263 App. Div. 352, 355, revd. on other grounds, 290 N.Y. 109), although concededly there is no basis herein for such a finding as was made in the Thomas case, that the hardship there claimed was created for the very purpose of making it possible to request a variance.
Again, on the same question, petitioner makes no showing that this particular property was, or is, the only one available or suitable for cemetery use, even if acquisition be confined to lands in the town of Greece. On the contrary, the report of the County Regional Director of Planning indicates that there are other places in the town within the zoned area which are available. The fact that the board requested such information might well indicate that had any of those locations been the subject of a request for variance, it would have been granted.
Nor is there any showing that the denial of the request will result in financial loss to petitioner. While financial loss, in and of itself, especially if all other owners of similar lands in the zone suffer substantially the same loss, cannot be made the basis for establishing hardship, still, after all, it does not follow that it need be entirely ignored. Not only is it not apparent that the property cannot now be sold without loss, but it is not so clear that at the present time it could not be sold at a profit. In the absence then of any showing that this was the only land available for petitioner’s purposes, then the absence of a showing of financial loss could be taken into consideration in reaching an adverse determination on the question of hardship.
Assuming, however, that petitioner did show generally a peculiar situation, not of its own creation, which will result in unnecessary hardship to it if the ordinance be enforced, still the board was not obligated on that score alone to grant the variance. On the contrary, it was required to balance such *42 hardship against the equities, namely, to what extent the variance would interfere with the whole zoning plan and the rights of owners of other property. While it is;true that after the lapse of sixteen years, residential building has not progressed as far as the immediate area of the petitioner’s land, still one must recall that very soon after the adoption of this ordinance and thereafter for years, this country was in the depths of an extreme depression, during which there was but little- building. Certainly, there was not much building in the towns around the city of Rochester during the 1930’s. Building generally, had quickened during the years immediately preceding the outbreak of the war, but again we know that for the last four years there has been practically none. It is also quite universally assumed that for the next three or four years, there will be a great amount of it. It would not have been pure speculation if the board assumed that there will be a residential building boom reaching to this particular area in the comparatively near future.
Even if this section is at the present time practically undeveloped, still-that fact alone did not require the board to grant a variance. This town was evidently zoned, at least it is necessary so to assume from this record, according to a comprehensive plan which had for its purpose the development of this district along with other sections of the town. as residential areas.. True it is that if this particular property be viewed in its present situation, it might well be said that the regulation attempted is wholly unrelated to the future development of the community. Such an argument, however, would apply practically to all zoning ordinances, and would permit any court, on a review of adverse action by the board on a request for a variance, to hold that there was no reasonable prospect in the future that a district would be utilized for the purpose for which it was zoned. Such a conclusion by a court would ignore, completely, the fact that the board has been created for the very purpose of determining just such questions. Here, such a body has decided that particular contention adversely to the petitioner. Neither the Special Term nor this court has any power either to make the determination de novo or to substitute its judgment for that of the board, which ought not to be set aside unless it clearly appears that the board’s action was arbitrary and unreasonable. (Matter of Calcagno v. Town Board of Webster, 265 App. Div. 687, affd. 291 N. Y. 701.) This record is not convincing that the board’s denial was either arbitrary or unreasonable.
*43 As bearing upon the possibility that to locate this cemetery where contemplated would interfere with residential development of -the entire section, .the fact that by- section-450 of the .Beal.Property Law lands used for cemetery-purposes Are not subject to taxation either for general purposes or local improvements and that a variance would take out of this area 176 acres of land now subject to taxation, with a frontage of 3,000 feet on Latía Boad and 2,000 feet on Dewey Avenue, need not be entirely overlooked. The presence of this cemetery as thus located, might well be said to be something which would interfere with the location and improvements of streets and. the extension of sewers and .utilities in the entire section.
Lastly, while it probably would not be permissible to have denied this request on the basis of aesthetic grounds alone, still objection so- based again need not be completely disregarded. (Dowsey v. Village of Kensington, 257 N. Y. 221, 230.) The Board of Appeals was not required to rule out the idea that the presence of the cemetery might of itself be a baneful influence which would retard residential development in the particular section.
Upon the entire record it seems reasonably clear that enough has not been shown to warrant the conclusion that in denying this variance the Board of Appeals acted in- an arbitrary or unreasonable manner. If, in the judgment of the board, -to locate this cemetery where it is sought to locate it, would interfere with the residential development of that section and so, with the scheme of the ordinance, the courts should be slow to substitute their judgment for that of a tribunal set up to determine such questions. (Dissenting opinion of Justice McAvoy in Matter of Goldenberg v. Walsh, 215 App. Div. 396, 400, revd. on that dissenting opinion, 242 N. Y. 576.)
Nor does the denial of this variance necessarily leave the -petitioner remediless. It may be that it still has its remedy by action, despite the denial of the variance, in which it may attack the validity of this ordinance upon any ground. (Arverne Bay Construction Co. v. Thatcher, 278 N. Y. 222.)
For the foregoing reasons, the order of the Special Term should be reversed and the determination of the Board of Appeals confirmed.
All concur. Present — Tatlob, P. J., Dowling, Harris, McCtjrn and Larkin, JJ.
Order of the Special Term reversed on the law, without costs of this appeal to any party, and determination of the Board of Appeals confirmed, without costs.